In the Matter of TRIDENT ASSOCIATES LIMITED PARTNERSHIP, a Michigan Limited Partnership, d/b/a Beztak of Tri Atria Limited Partnership, Debtor.

TRIDENT ASSOCIATES LIMITED PARTNERSHIP, a Michigan Limited Partnership, d/b/a Beztak of Tri Atria Limited Partnership, Plaintiff–Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.

Bankruptcy No. 93–46907–G.

No. 93–72996.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Sept. 30, 1993.

Sheldon S. Toll, Detroit, MI, for debtor.

Judith Greenstone Miller, Michael S. Khoury, Detroit, MI, for creditor.

Patrick A. Moran, John D. Gaber, Detroit, MI.

## MEMORANDUM OPINION AND ORDER

RAY REYNOLDS GRAVES, Chief Judge.

This Court is presented with creditor Metropolitan Life Insurance Company's (Metropolitan) motion to lift and annul the automatic stay and for dismissal based upon the completion of a Pre–Bankruptcy Foreclosure by Advertisement and Debtor's Motion in Opposition to Metropolitan's motions.

### INTRODUCTION

At first blush, it appears that this case turns upon the crucial issue of whether a foreclosure by advertisement occurred pre- or post-bankruptcy, where the debtor filed for protection some nine (9) minutes after the foreclosure sale began. However, Metropolitan pursued and ultimately prevailed upon its motion for dismissal based upon a lack of good faith on the part of the debtor, Trident Associates.

### FACTS

On June 22, 1993, a foreclosure by advertisement was scheduled to open at 10:00 a.m. for the purpose of selling a building that the debtor was purchasing from the mortgagee MetLife. Almost simultaneous to the foreclosure sale, some nine minutes later, the debtor filed for protection pursuant to chapter 11 of the Bankruptcy Code. Although the pleadings are replete with accusations with respect to the timing issue as to whether the foreclosure sale was complete or not at the time of the sale, during the hearing, the parties argued for dismissal solely based upon a lack of good faith on the part of debtor Trident.

MetLife artfully presented this court with a clear and concise chart which reflects the debtor's pre-bankruptcy strategy in preparation for bankruptcy.[1] The recitation by MetLife revealed a methodical plunge into bankruptcy.

On or about June 22, 1993, Trident Associates Limited Partnership (debtor) also oper-

---

1. The facts that transpired pre-petition are crucial:

   a. On June 14, 1993, the debtor prepared a Voluntary Chapter 11 Bankruptcy Petition, in the name of Trident Associates Limited Partnership. Julio Puzzuoli signed the Bankruptcy Petition on that date as representative of Trident General, Inc., the general partner of the debtor.

   b. Trident General, Inc. was not incorporated until June 15, 1993. The incorporator was Kenneth Clarkson, an attorney with the Evans and Luptak law firm of which Mr. Luptak is a

ating as Beztak of Tri Atria Limited Partnership, filed a Voluntary Petition under chapter 11 of the Bankruptcy Code. The single asset of the debtor is an office and commercial building in Farmington Hills, Michigan known as Tri Atria Center. Creditor Metropolitan is the holder of a note, mortgage and assignment of rents and leases executed by Tri Atria Company to secure a principal indebtedness of $23,000,000.00.

Eventually, Beztak failed to pay 1990 and 1992 real property taxes causing an event of default under the mortgage. On or about May 4, 1993, MetLife recorded a Notice of Default in the terms and conditions of mortgage with the Oakland County Register of Deeds and thereafter began foreclosing by advertisement proceedings. The foreclosure sale was originally scheduled for June 15, 1993 but was adjourned until June 22, 1993 at 10:00 a.m. in the Oakland County Courthouse. The foreclosure sale was held at 10:00 a.m. on June 22, and Metropolitan was the successful bidder at the sale having made a bid in the amount of $19,000,000.00 at approximately 10:05 a.m.

Minutes later at approximately 10:09 a.m. the debtor commenced the instant bankruptcy proceeding. It is interesting to note that Beztak is not the debtor in this matter but rather Trident Associates Limited Partnership, as Beztak was apparently reconstituted to create the new entity without notice to Metropolitan as required.[2] Therefore, Trident now has a corporate general partner, which was not formed until after the schedules filed with this Court were executed.

### DISCUSSION

■ MetLife asserts that its motion for relief from the automatic stay should be granted pursuant to 11 U.S.C. § 362(d) for a myriad of reasons:

> principal and with which Mr. Beznos is affiliated.
> c. On June 15, 1993, a certificate of Amendment of Limited Partnership was filed, changing the name of the Beztak Limited Partnership to Trident Associates Limited Partnership without the express permission of MetLife as required.
> d. During the hearing to appoint a receiver the debtor assured the Court that it would not file Bankruptcy in an effort to have the motion denied.

1) the debtor does not have equity in the security property;[3]

2) the property is not necessary for an effective reorganization;

3) the debtor has exhibited bad faith by reforming a new entity and transferring the assets of Beztak without further notifying MetLife and obtaining permission in compliance with the security agreement.

■ Although it is rare for this Court to lift the automatic stay as a result of bad faith, this case is representative of the archetype bad faith case. Generally, a determination of whether bad faith exists is to be determined based upon the totality of the circumstances. *Society National Bank v. Barrett*, 964 F.2d 588 (6th Cir.1992). In determining whether a chapter 11 debtor has acted in bad faith, the Sixth Circuit has looked at factors such as whether the debtor has any assets, whether the debtor has an ongoing business to reorganize and if there is a reasonable probability that a confirmable plan can be prepared. *In re Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985). Moreover, courts have specifically considered factors which evidence an intent to abuse the judicial process, and in particular, factors which evidence that the debtor filed a petition to delay or frustrate the legitimate efforts of secured creditors to enforce their contractual rights. *In re Phoenix Picadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988).

■ Correspondingly, the facts in the instant case ostensibly portray unambiguous manifestations of bad faith. Although standing alone a single asset real estate case is not cause for dismissal, it does give rise to further inquiry. Furthermore, the debtor admittedly does not have equity in the property and does not have any other ongoing business to reorganize.

> e. The debtor, in an effort to thwart foreclosure proceedings made several unsubstantiated and inaccurate declarations in a desperate attempt to deceive court officials to prevent the sale.

2. The debtor knew of this requirement to seek consent.

3. During the hearing, all parties agreed that the debtor did not have equity.

The timing of the debtor's filing is pernicious and demonstrates an attempt to delay the foreclosure action commenced by MetLife thus frustrating MetLife's efforts to enforce its contractual rights. The foreclosure sale commenced on June 22, 1993 at 10:00 a.m. and the petition was filed at 10:09 a.m. Such timing was clearly meant to delay the effect of the foreclosure sale.

### CONCLUSION

MetLife is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d). The debtor lacks equity in the asset and there is no realistic possibility of a successful reorganization. Moreover, the debtor has failed to adhere to requirements of the security agreement and has disregarded terms set forth in the agreement and proceeded in the face of the note and blatantly acting outside of the agreement in bad faith attempted to proceed in spite of MetLife. Accordingly, the plan is not feasible or facially confirmable.

For the reasons stated above, this case has demonstrated cause to lift the automatic stay.

**IT IS SO ORDERED.**